BIRMINGHAM SAVINGS BANK, Appellant, v. E. E. KELLER, Appellee.

OCTOBER 18, 1927.

REHEARING DENIED FEBRUARY 14, 1928.

*Starr & Jordan* and *Robert R. McBeth,* for appellant.

*Thoma & Thoma* and *J. C. Calhoun,* for appellee.

Evans, C. J.—The note in suit is for $5,000, bearing date September 10, 1920, signed by W. T. Dow, and indorsed by J. H. McCarty and Ed. Keller. The specifications of error by the appellant are directed to the admission of certain evidence and to certain instructions given by the court. In order to appreciate the pertinency of the rulings complained of and of the objections thereto, a general statement of the principal facts involved is desirable.

The four persons who figure in the evidence are Dow, McCarty, Keller, and Mott. Dow was the purported maker of the note; McCarty was a purported indorser; Mott was the cashier of the plaintiff bank; Keller is the defendant. McCarty was president and general manager of the Stockport Savings Bank. This bank and the plaintiff bank were located in the same county, six miles apart, and more or less business was transacted between them and between their managing officers. Keller was a farmer, who had bought a farm from Dow, and who made settlement therefor on March 1, 1920, at the Stockport Savings Bank. He appears to have prepared himself with cash resources sufficient to pay the purchase price, including a $10,000 mortgage on the farm. The mortgage was not due by its terms until March 15, 1920, and Keller was advised that he could not pay it before that date. Dow and McCarty proposed to him that they would borrow the money in his hands ($10,000) for 15 days. They tendered him a joint note accordingly, which he accepted. Upon the maturity of the note, the makers failed to pay the same. Some months later, it was agreed between the makers and Keller that they should make a payment of $5,000 upon the note, and that the remainder thereof should be extended to March 1, 1921. Shortly thereafter, while Keller was in the plaintiff bank, he was advised by Mott that he had arranged with Dow and McCarty to loan them $5,000 for the purpose of payment upon Keller's note, and for that purpose Mott had prepared a purported note for $5,000, drawn to Keller, as payee, and signed by Dow. This was presented by Mott to Keller for his indorsement, which indorsement Keller then and there made. The same note was later indorsed by McCarty. Thereupon Keller received credit upon his account at the plaintiff bank for the sum of $5,000. A credit of $5,000 also was indorsed as a payment on the $10,000 note held by Keller against Dow and McCarty. This

action is brought upon Keller's indorsement of the $5,000 note herein described. This note fell due on March 10, 1921. Shortly prior to such date, Keller, in a conversation with Mott at the bank, expressed his insistence that the $5,000 note signed by Dow should be paid promptly when due. Mott promised that he would insist upon prompt payment. Shortly after the due date of the note, Keller returned to the bank, and asked Mott whether the note had been paid, and was assured by Mott that it had been paid. He thereupon, as he claims, dismissed the subject from further attention, fully believing that the indebtedness had been collected. The note had not in fact been collected, but this fact was never disclosed to Keller until November, 1922, though he was frequently at the bank in the transaction of other business, he being a regular customer of the plaintiff bank.

It appears also that, at Mott's suggestion, and on March 14, 1921, Keller drew a sight draft upon Dow for the full amount of the balance due him on the $10,000 note. He received credit at the bank on the same date for the amount of the sight draft, which was honored in due course. It is the contention of Keller that this method of collecting that note was pursuant to some arrangements between Mott and McCarty and Dow, or between Mott and one of them. The testimony of Keller as to representations made by Mott was not denied by Mott, but was avoided by an explanation. This explanation was that his statement had reference to the payment of the sight draft above referred to, and not to the $5,000 note.

Prior to November, 1922, when Keller discovered that the $5,000 note had not been paid, as was claimed by plaintiff, both Dow and McCarty had become insolvent. The foregoing is a sufficient statement to indicate the nature of the estoppel pleaded, and to enable a consideration of the alleged errors discussed by the appellant.

The foregoing is Keller's version of the facts. His evidence tended to support it.

I. The first complaint of appellant is directed to the admission of certain evidence by the witness Dow and certain other evidence by the witness Mrs. Dow. Both Dow and McCarty were made parties defendant. McCarty defaulted, and judgment was entered against him. Dow interposed defense,

and the cause is still pending as to Dow. The trial had, however, was upon the issue with defendant Keller alone.

Keller testified, as heretofore indicated, that he had a conversation with Mott, shortly prior to the maturity of the note in suit, wherein Mott assured him that he would press the note to prompt payment upon its maturity; that he had a further conversation shortly after the note had matured, wherein he asked Mott whether the note had been paid; and that he was then and there assured by Mott that it had been paid. This evidence, it will be noted, tended to sustain both the plea of estoppel and the plea of payment. Mott testified that he understood the conversation to refer to the balance of the $10,000 note, which had been collected through sight draft. Mott did not in terms deny the conversations. Dow testified to a conversation with Mott in the early part of the year 1922, wherein Mott said that an arrangment had been made with McCarty to take care of the note. Dow was claiming that the debt was McCarty's, and should be paid by him. Mrs. Dow testified to a conversation had with Mott, subsequent to that had with her husband, wherein Mott told her, in substance, that McCarty had paid the note.

The complaint directed against this evidence by appellant is that Keller had no knowledge of these conversations, and was not influenced by them, and that, therefore, the evidence would not tend to sustain his plea of estoppel, which was the only defense submitted to the jury.

When this evidence was received, the defense of payment was in the case. The evidence did tend to support that plea. It was properly received for that purpose, if for no other.

When the court later withdrew this defense, the plaintiff moved to withdraw all such evidence from the consideration of the jury, on the ground that it did not tend to sustain the plea  of estoppel, in that the representations then made were remote in time, and were not known to Keller. The court overruled this motion. Some of the plaintiff's exceptions are predicated on such ruling. The argument in support of the motion is renewed here. However, the ground of the motion overlooks one feature of the record which, in our judgment, rendered the testimony objected to admissible. Keller had testified that, some-

time after the note was due (March 10, 1921), he had been assured by Mott that the note had been paid. Without denying the conversation testified to by Keller, Mott met it with an avoidance, to the effect that his assurance referred to the $5,000 sight draft which had been previously collected. If this testimony of Mott's were accepted by the jury as true, the evidence of Keller would thereby become wholly nugatory. It was permissible, therefore, for Keller to sustain his testimony, if he could, by the subsequent conduct of Mott with reference to the same transaction. One such circumstance was that Mott never again mentioned the note to Keller, though the note was past due, and though Mott continued as cashier until November, 1922, when he was succeeded by another cashier. Keller's first information of the nonpayment of the note came from the new cashier in November, 1922. During all such intervening time, Keller had continued as a customer of the bank, and was frequently therein, transacting business with Mott, and was known by Mott as a prompt payer, according to his own testimony. We think, therefore, that the conduct of Mott in the intervening time, including his statements to Mr. and Mrs. Dow in February, 1922, had a proper bearing on the conflict of evidence between him and Keller, and that they did tend to support Keller in his version of the conversation which he had with Mott following the due date of the note. It is true that these statements did not, of themselves, operate as an estoppel, but they did tend to strengthen the previous testimony of Keller, upon which he relied in support of his plea. In the conflict of testimony between Keller and Mott, this evidence bore upon the respective weight and credibility of each. This being so, the ruling of the court was not erroneous, even though it were predicated upon untenable ground.

II. The appellant complains of Instruction No. 6, given to the jury. This instruction is an abstract statement of the law as to the legal recourse of one who is secondarily liable upon an instrument. This instruction did not deal with any fighting issue involved in the case, and might well have been omitted. But we see no reason for saying that it contained anything prejudicial. The same is to be said concerning Instruction No. 7.

III. The more serious objection is made to the method

adopted by the court in its instructions in submitting to the jury the plea of estoppel.

The facts pleaded by defendant were, in substance, that, prior to the maturity of the note, Mott had promised to collect it promptly; and that, after said time of maturity, he stated that  he had collected the same. So far as the estoppel was concerned, the preceding promise and the subsequent statement of facts were parts of the same thing. The preceding promise was not enforcible as such, nor was the defendant seeking to enforce the same. The promise was not binding, as such. Section 9583, Code of 1924. It could have been corrected or withdrawn at any time. But in so far as it operated in connection with the subsequent statements of fact to mislead the defendant and to lull him into security, it was properly pleadable, as a part of the estopping facts. There was but one plea of estoppel. The court in its instructions, however, set forth the preceding promise in one instruction and the subsequent statements of fact in another instruction. This method gave an appearance of setting forth two separate and independent pleas of estoppel. The preceding promise was set forth in Instructions 11 and 12. The specific exception to these instructions is that the court permitted the jury to find that the defendant had relied upon them, notwithstanding the undisputed testimony that he afterwards inquired about the note and relied only upon the alleged statement of Mott that it had been paid. The point is not without its force. If the change in the financial condition of Dow and McCarty had occurred in the intervening time between the preceding promise and the subsequent statements of fact, we should deem the instruction prejudicial in its method of submitting the issue. But the record discloses no change in the financial condition of Dow and McCarty in the intervening time. The evidence is that they were solvent, and that the note was collectible from them at the time that the subsequent statements of fact upon which Keller relied, were made. This being so, we think that the error complained of should not work a reversal.

IV. After verdict, the plaintiff filed a motion for a new trial and a motion for judgment notwithstanding the verdict. Some days thereafter, it filed an amendment to its motion for

judgment notwithstanding the verdict, setting forth the additional ground therefor that defendant's answer contained no allegation that the defendant had relied upon the statements of Mott. This point was thus raised for the first time. Evidence of such reliance was introduced at the trial without objection, and the issue thus tendered was submitted to the jury in the instructions, without objection. The issue was, therefore, voluntarily litigated, and we think it was too late to attack the pleading at this time. Under Section 11557, Code of 1924, the court could have required an amendment to cure the defect, if it had deemed it necessary. In view of the evidence and the instructions on the subject, an amendment to the pleading would have been a mere formality, at best. It would, perhaps, have been the more appropriate way for the court to have required an amendment. On the other hand, we have frequently held that parties will be held to the result of the litigation where they have voluntarily litigated issues not in the pleadings. The evidence of Keller that he did so rely has very substantial corroboration in the circumstances. He was a regular customer of the bank's and a frequent borrower. Mott testified that he was always a prompt payer, and that he never allowed his obligations to become overdue. The evidence is without dispute that, after the conversation relied on by him, neither he nor Mott ever reverted to the subject in their conversation. The note called for semiannual interest. No interest was paid or demanded, though four semiannual dates were passed within the overdue period, before demand was finally made upon the defendant, in November, 1922. This demand was made by a new cashier, who succeeded Mott. The general attitude or conduct, therefore, of both Mott and Keller was clearly consistent with the claims of Keller in this regard. We think, therefore, that the issue of reliance should be deemed to have been voluntarily litigated, and that the defect in the pleading will not avail the appellant as reversible error.

Other points argued need not be considered in further detail. They are substantially met by what we have already said. The case is essentially a fact case, and presents no especially de-

batable questions of law. We discover in the record no proper ground for our interference with the verdict.

The judgment below is, accordingly, affirmed.—*Affirmed.*

DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.